UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT J. BINGA, | § |
| Plaintiff, | § § § |
| v. | § Case # 1:18-cv-1458-DB § |
| COMMISSIONER OF SOCIAL SECURITY, | § MEMORANDUM DECISION § AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff Robert J. Binga ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 19).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 17. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No. 13) is **DENIED**, and the Commissioner's motion (ECF No. 17) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed his DIB and SSI applications on April 27, 2015, alleging a disability beginning January 1, 2015 (the disability onset date), based on: "(1) Chronic idiopathic urticaria; (2) recovering addict; (3) alcoholic; (4) angioedema; (5) bi-polar; (6) hepatitis c; (7) high blood pressure ; (8) Crohn's disease; (9) depression; and (10) allergies." Transcript (Tr.) 285-97,

326. Plaintiff's applications were initially denied on July 8, 2015, after which he requested an administrative hearing. Tr. 238–46, 249–51. A hearing was held in Buffalo, New York, on July 12, 2017. Tr. 87. Administrative Law Judge Lynette Gohr (the "ALJ") presided over the hearing. Plaintiff appeared and testified at the hearing and was represented by Kelly Laga-Sciandra, an attorney. *Id*. Rachel Duchon, an impartial vocational expert("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on November 27, 2017, finding Plaintiff not disabled. Tr. 87-102. On October 17, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her November 27, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020;

2. The claimant has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: migraine headaches, chronic idiopathic urticaria, angioedema, a depressive disorder, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),[1] because the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although the claimant is unable to climb ladders, ropes, and scaffolds, he is occasionally able to stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant is unable to work at unprotected heights or around dangerous machinery, and he must avoid exposure to noise that is greater than moderate (as defined by the DOT). The claimant must also avoid exposure to bright lights or flickering lights (such as would be experienced in welding or cutting metals). In addition, the claimant is limited to simple routine tasks, simple work-related decisions, and minimal changes in work routines and processes. The claimant is unable to engage in work with strict production quotas, but he is frequently able to interact with supervisors, co-workers, and the public;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on July 24, 1963. and he was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2015 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 87-102.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on April 27, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 102. The ALJ also determined that, for the application for supplemental security income, filed on April 27, 2015, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts two point of error: (1) The ALJ failed to properly evaluate Plaintiff's physical impairments; and (2) the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychiatrist Michael Godzala, M.D. ("Dr. Godzala"). *See* ECF No. 13-1 at 1. The Commissioner argues in response that substantial evidence supports the ALJ's findings. *See* ECF 17-1 at 3.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

In March 2014, prior to his January 1, 2015 alleged onset date, Plaintiff presented to allergy specialists Andrew Green, M.D. ("Dr. Green"), and Roland Honeine, M.D. ("Dr. Honeine") for evaluation of hives (urticaria) and angioedema.[2] Tr. 415. With respect to the angioedema, the records in this case reflect only lip swelling and no throat or tongue swelling, as would be indicative of more serious anaphylactic reactions.[3] Plaintiff received a prescription for various medications, including Prednisone. Tr. 416. Plaintiff's symptoms initially improved with medication. Tr. 419, 422–23, 425, 427, 446. However, by January 2015, Dr. Honeine observed that Plaintiff did not have good relief of his symptoms. Tr. 446. His last angioedema episode was on December 29, 2014, and he still had intermittent hives. *Id*. An examination revealed no urticaria or angioedema. Tr. 446–47. Dr. Honeine administered a Xolair injection to treat Plaintiff's hives. Tr. 446. His latest record from his internal medicine doctors note that his chronic urticaria and angioedema are better controlled, and he was noted to be in no acute distress and well appearing. Tr. 11-12. The ALJ discussed the medical evidence related to Plaintiff's hives and determined that such were intermittent (no consistent ongoing treatment), as well as controlled by medication. Tr. 96. The record reflects this analysis.

Likewise, in September 2015, James Stephen, M.D. ("Dr. Stephen"), Plaintiff's treatment provider for his opiate dependence, observed that Plaintiff's hives were "relatively well controlled" without using any medication. Tr. 866. The record reflects that Plaintiff received treatment from

---

[2] Angioedema is a condition that occurs predominantly on the skin of the face, normally around the mouth and the mucosa of the mouth. *See generally Gravel v. Prison Health Servs., Inc.*, No. 1:07-CV-237, 2009 WL 1456787, at *5 (D. Vt. May 19, 2009). "Characteristically, it is manifested by swelling developed over a short period of time, [and its cause] is essentially unknown. However, heredity or recent exposure to allergens is [are] thought to be precipitating causes." *Id*.

[3] *See generally* Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hives-and-angioedema/symptoms-causes/syc-20354908 (last visited February 28, 2020).

Dr. Stephen for opiate dependence throughout the relevant period. In March 2016, Dr. Stephen observed that Plaintiff's hives had lessened and recommended that Plaintiff cut back on antihistamines. Tr. 852. Dr. Stephen consistently observed that Plaintiff's opiate dependence was stable, and he was doing well on his medication. Tr. 836, 842. Upon examination, Plaintiff sometimes had a depressed mood, but consistently demonstrated good eye contact, normal speech, and no suicidal thoughts. Tr. 842, 845, 865, 886, 926, 939. Plaintiff displayed a normal mood and affect at other appointments. Tr. 852, 870, 919, 920, 923, 942. At appointments in September and November 2016, Dr. Stephen observed that Plaintiff's mental-health symptoms were improving. Tr. 918, 920.

Plaintiff twisted his left knee in March 2017. Tr. 906-907. Upon examination, he had slight bilateral leg swelling and a slightly swollen left knee. Tr. 907. Imaging showed a mild effusion and mild osteoarthritis. Tr. 833. That same month, Plaintiff presented to William Bevilacqua, M.D. ("Dr. Bevilacqua"), for evaluation of his venous insufficiency. Tr. 718–19, 1039-41. Upon examination, Plaintiff had moderate edema in his legs. Tr. 719, 1040. Dr. Bevilacqua diagnosed Plaintiff with venous insufficiency and recommended that Plaintiff wear compression stockings, which he had not worn before. Tr. 718–19, 1039–40.

Plaintiff's treatment records often reflected that he had no edema in his extremities. Tr. 741, 760, 762, 765, 774, 915, 932, 935, 1035, 1044, 1058, 1062, 1077, 1273. Additionally, he frequently had normal strength, range of motion, and sensation in his extremities. Tr. 514, 765, 774, 1066–67, 1073, 1077. Plaintiff's gait was consistently normal. Tr. 550, 552, 554, 765, 1067, 1073, 1077, 1176, 1178, 1184, 1190, 1192, 1198, 1200, 1207, 1212, 1214, 1216, 1221, 1223, 1228, 1232, 1234, 1239, 1241). Multiple musculoskeletal, neck, and back examinations were also unremarkable. Tr. 514, 527, 741, 745, 747, 755, 760, 762, 765.

7

In March 2015, Plaintiff established care at Lake Shore Behavioral Health ("Lake Shore"). Tr. 536. Plaintiff attended counseling appointments through February 2017 (Tr. 1181) and also attended monthly medication management appointments with Dr. Godzala from March 2015 through April 2017. Tr. 543–55, 1176–1242. Dr. Godzala's mental-status examinations revealed that although Plaintiff often had a down mood and restricted affect, he had intact memory; logical thought processes; normal thought content; a cooperative demeanor; adequate grooming; fair eye contact; normal speech; fair insight and judgment; no suicidal or homicidal thoughts, fair or only mildly impaired concentration and attention; and an average fund of knowledge. Tr. 545–47, 550, 552, 554, 1176, 1178, 1184, 1192, 1198, 1200, 1207, 1212, 1214, 1216, 1221, 1223, 1228, 1232, 1234, 1239, 1241. During his treatment at Lake Shore, Plaintiff received Global Assessment of Functioning ("GAF") scores[4] ranging from 55 to 60. Tr. 548, 1202, 1230.

On May 2, 2017, Dr. Godzala completed a "Mental Treating Medical Source Statement" (a check-the-box form), in which he concluded that Plaintiff had disabling mental limitations. Tr. 1246-50. Specifically, Dr. Godzala opined that Plaintiff could not engage in full-time competitive employment and would miss work more than four days per month. Tr. 1250. Dr. Godzala also checked boxes indicating that Plaintiff had a limited but satisfactory ability in 10 areas of functioning, including maintaining regular attendance, making simple work-related decisions, accepting or responding appropriately to criticism from supervisors, asking simple questions, maintaining socially appropriate behavior, and interacting appropriately with the public. Tr. 1248-

---

[4] GAF scores are designed to consider factors outside those used in disability determinations. *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) (noting the GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information"). A GAF score in the 51 to 60 range indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Zabala v. Astrue*, 595 F.3d 402, 406 n.3 (2d Cir. 2010) (internal citations omitted). The Social Security Administration has limited the manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted).

49. Additionally, Dr. Godzala indicated that Plaintiff was seriously limited in 15 areas of functioning, including understanding, remembering, and carrying out very short and simple instructions; dealing with normal work stress; responding appropriately to changes in a routine work setting; dealing with the stress of semi-skilled or skilled work; and understanding, remembering, and carrying out detailed instructions. Tr. 1248-49.

On July 2, 2015, non-examining state agency psychiatrist Gerald Kleinerman, M.D. ("Dr. Kleinerman"), reviewed Plaintiff's medical records and opined that Plaintiff had no significant limitations in adaptation, interacting with others, or understanding, remembering, and carrying out simple tasks. Tr. 224–25. He concluded that Plaintiff retained the ability to perform simple tasks and follow simple directions. Tr. 222. Examinations by Plaintiff's other doctors demonstrated that Plaintiff had a normal or appropriate mood (Tr. 447, 706, 714, 907, 932, 1035, 1273); cooperative, pleasant, and appropriate behavior (Tr. 523, 764, 1044, 1058, 1073, 1273); no cognitive deficits (Tr. 523, 766); normal speech (Tr. 1073, 1067); normal fund of knowledge (Tr. 1067, 1073); and normal memory and concentration (Tr. 514, 527, 1066-67).

After the hearing, Plaintiff underwent a consultative psychological evaluation in September 2017 by Gregory Fabiano, Ph.D. ("Dr. Fabiano"). Tr. 1303-08. Plaintiff told Dr. Fabiano that he had lost 25 pounds in the last six weeks. However, his weight average for six months prior to the exam and for a year thereafter was overall steady. Tr. 41, 61, 123,154,183. Upon examination, Plaintiff was tense and nervous but had a cooperative and friendly demeanor; normal speech; good hygiene; appropriate eye contact; coherent and goal-directed thought processes; only mildly impaired memory skills, good insight and judgment; and good attention and concentration. Tr. 92-93, 1305-06, 1310-11. He also had an adequate manner of relating and social skills. Tr. 1305. Plaintiff had low-average to average cognitive ability. Tr. 1311. Dr. Fabiano

9

opined that Plaintiff had no limitations in understanding, remembering, and carrying out simple instructions, and only moderate limitations in interacting with others. Tr. 1306-07, 1314-15. He further concluded that Plaintiff had no limitations in making work-related decisions, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine, maintaining personal hygiene, and being aware of normal hazards. Tr. 1306.

The ALJ gave significant weight to the opinions of Dr. Kleinerman and Dr. Fabiano due to their expertise, the consistency of their opinions with each other, and the overall evidence of record. Tr. 99. The opinions of consultative examiners and State agency doctors constitute substantial evidence when they are consistent with the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). However, the ALJ gave Dr. Godzala's May 2017 medical source statement very little weight because the opinions are inconsistent with the overall medical evidence, including the GAF scores contained in his own treatment notes, as well as the opinions of Dr. Kleinerman and Dr. Fabiano. Tr. 99. Supportability and consistency are valid factors in deciding the weight accorded to any medical opinion. *See Michels v. Astrue*, 297 F.App'x 74, 76 (2d Cir. Oct. 30, 2008); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Heagney-O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave great weight to the opinion of a medical expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record (internal citations omitted).

As noted above, Dr. Godzala was Plaintiff's treating psychiatrist. Treating physician opinions should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions").

Dr. Godzala completed a check-the-box form indicating that Plaintiff is "limited but satisfactory" or "seriously limited" in nearly every mental work-related activity. Tr 1246-50. The ALJ explained that "limited but satisfactory" is vague, non-specific, and undefined in the report itself. *Id*. The ALJ noted that although "seriously limited" is defined as "frequently less than satisfactory in any work setting," Dr. Godzala declined to check off the more-serious limitations of "unable to meet competitive standards" or "no useful ability to function," indicating that Plaintiff retains significant functional capacity for each of the mental work-related activities. *Id*. The ALJ also noted that Dr. Godzala checked boxes indicating that Plaintiff would be absent from work more than four days per month and would be unable to engage in sustained full-time employment; however, he provided no adequate explanations, and cited no clinical findings or other details to support his opinions. Furthermore, said opinions are inconsistent with the other well-supported psychological opinions in the record. Tr. 99. Plaintiff's last exam prior to the completion of the check-the-box form indicated that his appearance and behavior was cooperative; speech normal; affect was less restricted; thought process was logical for the most part; thought content was appropriate to session; he was oriented with fair attention and concentration; abstract reasoning, insight, and judgment were fair; and his gait and station were within normal limits. Tr. 1176.

The ALJ also cited evidence of Plaintiff's daily activities. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an ability to work). Plaintiff was able to travel to Florida in December 2016 to visit family (Tr. 187), and he went to Houston in February 2017 for a Superbowl game taking time to go on a yacht. Tr. 95, 189. The ALJ also listed other daily activities which indicated that Plaintiff was not as limited as alleged. Tr. 95. The Court notes

that consistently throughout the records Plaintiff exercised frequently. He recently had surgery for his varicose veins, apparently with a good response. Tr. 21. At his follow-up exam for venous surgery he denied musculoskeletal complaints or recurrent skin problems or rashes or allergic symptoms. Tr. 22

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Although Plaintiff's impairments were not disabling, the ALJ recognized that they caused various work-related limitations, and fully accounted for those restrictions in her RFC finding. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED,** and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE